**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 09 2013, 6:27 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT, PRO SE:

**JOHN S. DILLMAN, JR.**
Gladwin, Michigan

APPELLEE, PRO SE:

**MICHELLE DILLMAN**
Section, Alabama

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN S. DILLMAN, JR., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1209-DR-388 |
| | ) | |
| MICHELLE DILLMAN, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Elizabeth F. Tavitas, Judge
Cause No. 45D03-0204-DR-1322

**July 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

D.D. ("Father") appeals the trial court's order denying his petition to modify custody of his minor child, V.R.D.

We affirm.

## ISSUES

The following issue is dispositive: Whether the trial court abused its discretion in denying Father's petition to modify custody.

## FACTS AND PROCEDURAL HISTORY

Father and M.D. ("Mother") are the parents of V.R.D., who was born to the parents in 2001.[1] Father and Mother's marriage was dissolved on December 16, 2004. Mother was awarded sole physical custody of V.R.D. and Father was awarded visitation rights. At some point in 2009, Mother alerted Father that she was planning to move to Alabama, a move that the trial court ultimately approved. Father subsequently moved to Michigan, where he shares a house with his new wife and her three children.

On July 2, 2012, Father filed his petition to modify custody. In the petition, he alleged certain changes in the circumstances that existed at the time Mother was awarded custody. Among other things, Father alleged that (1) V.R.D. was now eleven years old; (2) Father wanted V.R.D. to live with him; (3) V.R.D. wanted to live with Father; (4) Mother had interfered with Father's relationship with V.R.D.; (5) Mother treated V.R.D.

---

[1] Both Father and Mother represented themselves at the custody hearing, and they also represent themselves on appeal. Although the record is devoid of some salient information, we are able to construct the procedural history from the trial court's chronological case summary. We are also able to review the trial court's custody determination by reviewing the court's order and the transcript of the modification hearing.

2

as a friend rather than a child; (6) Mother had sent inappropriate texts to V.R.D; (7) Mother had failed to set up Skype as ordered by the trial court; and (8) Mother had failed to obtain needed medical and dental care for V.R.D.

On August 6, 2012, the trial court held a hearing on Father's petition to change custody. As noted above, both Father and Mother represented themselves at the hearing, and the hearing consisted primarily of "he said, she said" accusations. Father had a counselor testify by telephone, and the counselor indicated that she could not say "whether the relationship [between Mother and V.R.D.] is healthy or not, but [a one-time exchange of texts containing profanity] was not healthy." (Tr. 29-30). When asked by Father whether she was concerned about V.R.D.'s "living situation in Alabama," the counselor responded, "I don't really know . . . My concern would be is if there was a pattern of, you know, what I read [the texts containing profanity], you know, but I don't see there's a pattern." (Tr. 33). The counselor indicated that V.R.D. had indicated interest in living in Michigan with Father. However, on cross-examination the counselor limited this observation by saying that V.R.D. was "kind of feeling like back and forth" about where she wanted to live. (Tr. 34).

Mother testified that the text containing profanity was accidently received by V.R.D. as part of a group message to adults. Mother also testified that other texts contained inside jokes that Father did not understand and interpreted unfairly. Mother further testified that she set up Skype, but Father was unable to get it to work on his end. Mother testified that she was unable to provide some medical and dental care to V.R.D.

3

because Father had not provided insurance information that allowed her to pay for treatment. Mother acknowledged that V.R.D. had sent a text to her that depicted a Care Bear with a marijuana leaf on its chest. Mother stated that afterwards she had explained the nature of the leaf to V.R.D. and had told her that it was inappropriate.

At the conclusion of the hearing, the trial court outlined for Father and Mother how any communication or insurance payment problems could be fixed. The trial court then concentrated its remarks on the relationship between Father and Mother as it affected V.R.D. and made the following advisory statements to Father and Mother:

[Father], [y]ou don't have nearly enough evidence for me to consider a possible change of custody.

* * * *

But here's what I want the two of you to tell [V.R.D.]. I want the two of you to tell her that the hearing went really well. And that the two of you now have a better idea of what mom and dad's problems are. And that it's not [V.R.D.'s] problem at all. [V.R.D.] didn't have [anything] to do with any of it. And that the two of you are going to figure out how to deal with it. So, we're going to take all the stress off of [V.R.D.]. That's what I want you to tell her. Because that's what we're going to work on.

* * * *

Any communication between mom and dad, I don't want any derogatory statements. I don't want any name calling. You don't like that person, I don't really care. I don't want to see it in your texts or your emails or your communication.

You treat each other like you never slept together. Like maybe you work with this person and that's how you know her or know him. Sometimes we treat complete strangers with more respect than we do with people we had previously been married to and I don't understand that either. I will not tolerate it. So, that's going to be your motto. Would I send this text to

4

someone I work with. And in your mind you say, no, I probably wouldn't. Then it's a best bet that you better not do it now.

Any texts that dad sends to mom I'll see. Any texts, mom, that you send to dad, I'm going to see. You're smart people. Use your common sense because if I see it again, I'm going to slam you. I really, really am. You guys are messing up [V.R.D.] and that bothers me the most.

(Tr. 107-114).

The trial court subsequently issued an order in which it stated that "Father has failed to satisfy his burden of proof that modification of custody is in the best interest of the child and that there has been a substantial change in one or more of the factors that the court may consider under I.C. § 31-17-2-8." (App. 24). The order further addressed Father's request that the trial court conduct an in camera interview with the child. The order denied the request and emphasized that V.R.D. was only eleven years old and that the counselor's testimony did not provide any reason to suggest that an in camera interview was necessary or in V.R.D.'s best interest.

Father now appeals.

DISCUSSION AND DECISION

Father contends that the trial court abused its discretion by denying his petition to modify custody of V.R.D. When reviewing a custody determination, we afford the trial court considerable deference as it is the trial court that observes the parties' conduct and demeanor and hears their testimony. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945-46 (Ind. Ct. App. 2006). We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters."

5

*Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*. We will not reweigh the evidence, judge the credibility of the witnesses, or substitute our judgment for that of the trial court. *Kondamuri*, 852 N.E.2d at 946. Rather, we reverse the trial court's custody determination based only upon a trial court's abuse of discretion that is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom. *Id*. It is not enough that the evidence might support some other conclusion. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). Reversal of the trial court's order occurs only when the evidence positively requires the conclusion advocated by the appellant. *Id*.

Custody modifications are dictated by Indiana Code § 31-17-2-21, which provides that a child custody order may not be modified unless modification is in the best interests of the child and there is a substantial change of circumstances in one or more of the factors that a trial court may consider under Indiana Code § 31-17-2-8. These statutory factors are:

(1)  The age and sex of the child.

(2)  The wishes of the child's parent or parents.

(3)  The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)  The interaction and interrelationship of the child with:

(A)  the child's parent or parents;

(B)  the child's sibling; and

6

   (C)  any other person who may significantly affect the child's best interests.

  (5)  The child's adjustment to the child's:

   (A)  home;

   (B)  school, and

   (C)  community.

  (6)  The mental and physical health of all individuals involved.

Because Father filed the petition to modify child custody, he carries the burden of establishing circumstances so substantial and continuous as to make the terms of the original child support determination unreasonable. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005).

Here, Father presented evidence that he was now amenable to exercising physical custody over eleven-year-old V.R.D. On the other hand, Mother had been exercising custody and was continuing to do so. Father's key witness, the counselor, testified that V.R.D. was conflicted as to where she wanted to live.[2] Although Father presented evidence that could be interpreted as Mother's inappropriate treatment of V.R.D. as an

---

[2] Father requested that the trial court conduct an in camera interview of V.R.D. to determine where she wanted to live. The trial court exercised its discretion in determining not to conduct an in camera interview of V.R.D. In doing so, the trial court explained that "[u]nder our statute I only consider fourteen years old and older." (Tr. 107). Father emphasizes that the statute does not prohibit a trial court judge from interviewing children who are younger than fourteen, which is true. However, the trial court's determination is based on more than V.R.D.'s age. The court stated, "You don't have enough evidence to modify custody, even if the child said it . . . . You don't have nearly enough evidence for me even to consider a possible change of custody." *Id.* Furthermore, V.R.D. was not physically available for such an interview; she was "at home." (Tr. 109).

7

adult instead of a child, the counselor could not verify that this behavior was common. Indeed, Mother testified that it was not common. Furthermore, Mother introduced into evidence a letter from the principal of V.R.D.'s school that described V.R.D. as "well adjusted," and Mother as "very helpful to the school faculty and staff members as well as supportive of [V.R.D.] as a student here." (Mother's Ex. A). Mother also introduced a report card showing that V.R.D. was doing well in school.[3]

Under the evidence presented at the hearing on Father's petition to change custody, we cannot say that the trial court abused its discretion in determining that Father failed to establish a substantial change of circumstances as to make the terms of the original child custody determination unreasonable. Thus, we affirm the trial court's denial of Father's petition to modify custody of V.R.D. In doing so, we join the trial court in urging Father and Mother to work together in V.R.D.'s best interest.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.

---

[3] The trial court did not specifically make findings regarding the factors enumerated in Ind. Code § 31-17-2-8. Although we were not hindered in our review, it would have been better practice to make findings consonant with the aforementioned factors.